UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY CAMPBELL,

   Plaintiff,      CIVIL ACTION NO. 07-13252

 v.           DISTRICT JUDGE SEAN F. COX

COMMISSIONER OF     MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

   Defendant.
_____/

## REPORT AND RECOMMENDATION

*Introduction*

  This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits. Plaintiff filed an application in April, 2001, alleging disability since 1998. There was a previous application which was denied, not appealed, and not reopened. This bars judicial review for the time period prior to July 20, 2000. See, Califano v. Sanders, 430 U.S. 99, 108 (1977); 20 C.F.R. § 404.981. Plaintiff's insured status expired December 31, 2004. On March 19, 2003, the ALJ found that plaintiff was not disabled and issued an unfavorable decision. Plaintiff alleges that the ALJ erred as a matter of law in not finding that plaintiff met Listing 1.04A and by discounting plaintiff's credibility. Defendant contends otherwise. For the reasons discussed in this Report, it is recommended that

the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits be affirmed.

*Procedural History and Findings*

The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine, carpal tunnel syndrome, sleep apnea, history of seizures, depression and a personality disorder. (Tr. 21, 24) Plaintiff is a retiree from General Motors in 1999. (Tr. 296) The ALJ also found that plaintiff was 47 years old (a younger individual); that he had a high school education and two years of college; that based on his testimony, he had not performed substantial gainful activity since 1998. The ALJ also found that plaintiff was not able to perform his past relevant work but could perform a significant number of jobs at the sedentary level which existed in the regional and national economy. (Tr. 23, 25)

*Legal Standards*

    *A. Disability Evaluation*

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists

in the national economy, regardless of whether such work exists in
the immediate area in which he lives, or whether a specific job
vacancy exists for him, or whether he would be hired if he applied
for work.

42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that he is disabled. Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims. 20 C.F.R. § 404.1520. In Foster, 279 F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial
> gainful activity. Next the claimant must demonstrate that she has a
> "severe impairment." A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment." If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

*B. Standard of Review*

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

*Analysis*

Plaintiff contends that he meets Listing 1.04A. Thus, he contends that he is entitled to a finding of "disabled" at the third step in the evaluation process. The Listing relates to disorders of the spine, including, *inter alia*, herniated nucleus pulposus and degenerative disc disease. In addition to diagnosis of such condition, plaintiff must demonstrate that there is:

> (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

Plaintiff testified that he had a laminectomy in 1991 and rehabilitation. After rehabilitation, he was able to work for six or seven years. (Tr. 365-66) His pain became worse and he was unable to continue working. He takes over the counter Ibuprofen for pain. (Tr. 368-69) He used to go to physical therapy and still did a little therapy on his own. He had carpal

tunnel syndrome and wore wrist braces during the summer and at night. (Tr. 369-70) Plaintiff could walk for 20 to 30 minutes, lift a gallon of milk but had problems bending and climbing. (Tr. 373-76) He was in constant pain and spent most of the time lying down or napping. (Tr. 381-83) He shared yard work with his dad, did some chores, occasionally shopped for groceries, and visited with friends and relatives. (Tr. 377) The ALJ asked the vocational expert to assume a person who could do a limited range of work, essentially as identified in plaintiff's residual functional capacity assessment of the state agency physicians, that is, lifting 20 pounds occasionally and ten pounds frequently, no push/pull, sit 6 to 8 hours, stand 4 out of 8 hours but not in increments of more than five minutes per hour, alternating positions at will, rarely bend, squat, kneel but occasional stairs or ramps, no ladders, ropes or scaffolds, no leg or foot controls, no crawling; no forceful gripping, grasping, no constant gripping or small object manipulation or prolonged use of the keyboard, no commercial driving, no hazards or machinery that could be injurious. The ALJ also limited the person to simple, routine tasks that did not involve hourly quotas. The vocational expert testified that such a person could perform sedentary work as a visual inspector (1800 jobs), surveillance system monitor (1600 jobs), reception clerk (6500 jobs) and information clerk (1800 jobs) (Tr. 386-388)

  In January 2001, Dr. Gavin Awerbuch, M.D., performed a neurological examination of plaintiff in response to plaintiff's complaints of chronic back and leg pain. (Tr. 296) At that time, he had not had an MRI for two years. On examination, plaintiff had good range of neck motion and no flank tenderness. His extremities showed no edema and pedal pulses were intact. He had reduced range of motion of the back with spasm. (Tr. 297) He had positive straight leg

raising, "slight" weakness of the right extension hallusica longus muscle, and positive Tinel's and Phalen's signs at the wrists. (Id.) His gait was antalgic and he was unable to squat and recover. Plaintiff had intact cranial nerves and negative Romberg's sign. (Tr. 297) Dr. Awerbuch diagnosed "failed back syndrome," chronic pain, lumbosacral radiculopathy, and carpal tunnel syndrome. (Tr. 297) Dr. Awerbuch discussed treatment options with plaintiff, who declined to have a follow up MRI or referral to the pain clinic. Dr. Awerbuch prescribed an EMG and medication. Id.

In March, 2001, Dr. Awerbuch saw plaintiff and discussed his EMG. Dr. Awerbuch felt it was indicative of bilateral carpal tunnel and bilateral L5 radiculopathy. (Tr. 298-303, 341-42) Braces and medication were recommended as well as a regular exercise program and biofeedback/relaxation therapy. This regular exercise program would increase plaintiff's flexibility and decrease pain. (Tr. 341-2) In June, 2001, Dr. Awerbuch saw plaintiff who continued to complain of chronic back pain and difficulty sleeping. (Tr. 340) Dr. Awerbuch continued to recommend conservative treatment and a sleep study. The sleep study showed obstructive sleep apnea. (Tr. 322-28)

In May 2001 and August 2001, plaintiff's medical records were reviewed by two state agency physicians who specifically considered whether plaintiff satisfied a listed impairment. Both rejected that and opined that plaintiff could perform a range of light work with limitations in push/pull, climbing, and only occasional stair climbing, stooping, kneeling, crouching and crawling, and occasional handling fingering. He should avoid concentrated exposure to vibration

and heights, to moving machinery and could not perform constant gripping and fine manipulation. (Tr. 330-34)

In September, 2001, plaintiff told Dr. Awerbuch that back pain limited his activities and riding a lawnmower caused pain. (Tr. 339) The medications help but plaintiff had side effects of gastric discomfort and drowsiness. On examination, plaintiff still had no flank tenderness, no edema of extremities, intact pedal pulses, mild spasm, reduced lumbar range of motion and positive straight leg raising. (Tr. 339) Dr. Awerbuch prescribed a long-acting opiate (Tr. 339). In December, 2001, plaintiff reported doing well initially with the medication but it caused stomach upset and he wanted something different. He also complained that chronic pain limited his walking, sitting, and standing. He reported numbness and tingling in his hands. There were no significant changes in the exam. Dr. Awerbuch gave him a pain patch and other medication. (Tr. 338)

*The Determination that Plaintiff Does Not Meet Listing 1.04A*

It is plaintiff's burden to establish that he meets the Listing. Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987). He must satisfy all the requirements of the listing in order to demonstrate that his impairments are equal to the Listing. Hale v. Secretary of HHS, 816 F.2d 1078, 1083 (6th Cir. 1987). Plaintiff has a disorder of the spine and is status post-laminectomy. However, there is no record of any nerve root compression characterized by motor loss, no atrophy with associated muscle weakness or muscle weakness, and no sensory or reflex loss as required by the Listing. The evidence shows that two physicians who reviewed plaintiff's record did not find that he met the Listing, and furthermore that he was capable of performing a limited range of

light work. State agency physicians are highly qualified in the area of social security disability evaluations, and it was not error for the ALJ to rely on their conclusions. 20 C.F.R. § 404.1527(f)(2)(I). Further, the 1998 diagnostic studies were previously considered on an earlier application and found insufficient. Plaintiff cannot point to this again as support for this claim. No physician has opined that he met Listing 1.04A and no medical evidence would support such a conclusion.

*Plaintiff's Credibility*

In addition, plaintiff claims the ALJ did not properly evaluate his complaints of disabling pain. The ALJ found they were not fully credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463 (6th Cir. 1987). Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal, 818 F.2d at 463 and 464. In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986) and the subsequent Social Security Act modification, 20 C.F.R. § 404.1529 (1995), incorporate the standard. A finding of disability cannot be based solely on subjective allegations of pain. There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be

- 8 -

expected to give rise to the alleged pain. Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991). Here, plaintiff has back pain–for which he now takes only over the counter Ibuprofen–and for which exercise and conservative treatment have been recommended. The ALJ took this pain into account when he made findings limiting plaintiff to a restricted range of sedentary work. Substantial evidence, including plaintiff's daily activities, supports this determination.

Plaintiff's reliance on Walston v. Gardner 381 F.2d 580, 586 (6th Cir. 1987) is misplaced. First, that case was decided prior to the statute's modification and second, in that case three doctors determined that plaintiff could not work because of his condition. Here, no medical source indicated that plaintiff could not work. The hypothetical accurately reflected the medical evidence of record and in addition, gave some credence to plaintiff's subjective complaints.

*Conclusion*

There is not a showing that plaintiff met Listing 1.04A nor that the ALJ improperly evaluated his credibility. The ALJ determined the residual functional capacity and his ability to perform the work identified based on the medical evidence. Thus, plaintiff's motion for summary judgment should be denied, the defendant's motion granted, and the decision denying disability benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific

objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: June 3, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on June 3, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan